## Italian Club, Mocanaqua, License

*Louis Feldman,* and *Charles L. Casper,* for appellant.

*Peter P. Jurchak,* for Pennsylvania Liquor Control Board.

FLANNERY, J., March 3, 1948.—This is an appeal from an order of the Pennsylvania Liquor Control Board revoking club liquor license no. C-3345 issued to Italian Club of Mocanaqua, Pa. The order was based on the following reasons:

"1. The licensed organization is not a bona fide club operated for the mutual benefit of the whole membership.

"2. The sale of liquor and/or malt or brewed beverages is the primary purpose of the licensed organization."

From the evidence it appears that this club was incorporated by the courts of Luzerne County in March 1936 and shortly thereafter organized for the purposes indicated in the charter; bylaws were adopted, membership was enrolled and quarters were set up. It flourished and has continued in operation since. In 1939 copies of the bylaws were forwarded to the board and again in 1944 and no objection was made either to the bylaws or the manner of operation until an examination by one of the agents, Perrigo, a witness in these proceedings, made in May of 1947 and out of which these charges grew.

It appears that there were two classes of membership, active and social members. The active members, 14 in number, controlled the operation of the club; the social members, 330 in number, enjoyed all the privileges without the authority or responsibility of management. But nowhere is it alleged or shown that any one, active member or otherwise, profited personally from the operation of the club and on the contrary it affirmatively appears that the treasury is intact, surplus and all. It might be added parenthetically that when objection was made to the manner of membership the bylaws were promptly changed and new active members are being now taken in from time to time upon compliance with reasonable regulations.

Mocanaqua is a thriving community with a large American-Italian population of outstanding citizenship. This is the only organization of its kind there. We find them as active members the pioneers in the organization. They built up a strong, secure and flourishing club. They were proud of their initiative and jealous of their prerogatives. This membership became a group apart. Those who came later were assigned a subordinate position but aside from the added authority and prestige we can find no special benefit or advantage, economic or otherwise, that inured to the active members by that distinction. Certainly not such

as is contemplated by the act. They might have profited in some way but it is not shown that they did. If violation it was, then it was highly technical in its nature, condoned over the years and promptly corrected upon complaint. But until some personal profit—some special benefit—is shown we are not satisfied that it is a violation. It is a practice not uncommon for clubs to have active and social memberships, or resident and nonresident members, or special privileges to the clergy or to members of the armed forces. Classification of membership is not the test, mutual benefit of the whole membership within reason is the test and we believe before the amendment to the bylaws, and certainly since, the Italian Club of Mocanaqua meets that test.

Nor can we agree that the sale of liquor and/or malt or brewed beverages is the primary purpose of the organization. Testimony to support this concerned principally the system in force. It appears that the operation devolves largely upon the steward or bartender who receives $180 per month salary. For each half barrel of beer sold he is required to account in the sum of $13 to the club. Whisky is sold in $\frac{3}{4}$ ounce glasses at 15¢, 20¢ and 25¢ per drink depending on the quality. For a bottle of liquor selling at 15¢ per glass the steward is required to account to the club for the sum of $4.80; for that selling at 20¢ he is required to account for $6.40 and for that selling at 25¢ he is required to account for $8. By this system it is argued that the steward would thus be able to procure for himself over the period audited by agents of the board, viz., from April 1, 1946, to May 5, 1947, approximately $215.35 on the whisky sold and $1,120.90 on the beer. To arrive at these conclusions the agents of the board estimate an additional 70¢ on each $\frac{1}{2}$ barrel of beer sold and one additional drink out of each bottle of whisky sold. They allow no shrinkage, via sources, either human or mechanical, and with that we must respectfully disagree. We are constrained

to conclude that there is shrinkage, that there may be small quantities left in barrels and bottles, that spillage occurs and it is even within the realm of possibility that merchandise must be tested occasionally to verify flavor, temperature and vitality. We prefer to accept as more reasonable the estimates of the National Cash Register Company on returns to be expected from barrels and bottles in situations similar to those under consideration; also the estimates of the brewing interests or, perhaps, the standards adopted by the Department of Internal Revenue for estimating taxes. These are the figures which guide the business; they are based on hard realities and they are in evidence. According to these the returns required of the steward of the Italian Club of Mocanaqua are in accord with the common experience, they are reasonable and, in fact, high as compared with the average.

But this is somewhat academic. It hardly sustains the charges that the sale of alcoholic beverages is the primary purpose of the organization. True, the bar is the principal source of revenue, aside from the fairly nominal dues, but that is an incident, a by-product, that from the nature of the community and this organization is almost certain to follow in the operation of such a club. It frequently happens that the bar is the hub around which club life revolves and the same charge might be laid at the door of many similar groups. Here we find the Italian Club of Mocanaqua the only one of its kind in that area. It constitutes the principal gathering place of its members, a large segment of the local population. After all man is a gregarious being and more often than not sociable and congenial in his associations. These impulses find expression in many avenues. One of them is the club and inevitably, it seems, the bar. But this particular club has other more important purposes than mere sociability. It has a charitable and an athletic program and doubtless affords mutual, commercial and

other advantages which hold the membership together and contribute to their comfort and well being. To these the sale of alcoholic beverages were only secondary.

Under all the evidence the findings of the Liquor Control Board are reversed and the appeal is sustained.